## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZIMMER DEVELOPMENT COMPANY, LLC, | : | |
| Plaintiff, | : | No. 20-cv-4465-JMY |
| | : | |
| v. | : | |
| | : | |
| TVC DEVELOPMENT COMPANY, LLC, AND THOMAS F. VERRICHIA, | : | |
| Defendants. | : | |

## MEMORANDUM

**Younge, J.**                                                                                                                June 28, 2022

    Currently before the Court is a motion for summary judgment filed by the Plaintiff Zimmer Development Company, LLC, (Motion for Summary Judgment ("MSJ"), ECF No. 31), and a partial motion for summary judgment filed by Defendants, TVC Development Company, LLC and Thomas F. Verrichia (Partial Motion for Summary Judgment ("PMSJ"), ECF No. 34). The Court finds these motions appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f).

    For the reasons set forth in this Memorandum and accompanying Order, Defendants' motion for summary judgment will be granted as it pertains to the theory of conversion along with the conjoined request for punitive damages. Defendants' motion for summary judgment will also be granted on theories of account stated and breach of contract for the purported loan related to advanced expenses for the Indiana Project. The Parties' motions will be denied in all other regards.

I.       PROCEDURAL AND FACTUAL BACKGROUND:

   A.      **Procedural History:**

Plaintiff filed its Amended Complaint on March 24, 2021, which sets forth claims based on the following legal theories: Breach of Contract – Pre-Development Agreement – against TVC Development Company, LLC (Amended Complaint ¶¶ 53-64); Breach of Contract – Indiana Project Loan – against TVC Development Company, LLC (*Id.* ¶¶ 65-72); Intentional Misrepresentation against TVC Development Company, LLC and Thomas F. Verrichia (*Id.* ¶¶ 73-90); Negligent Misrepresentation against TVC Development Company, LLC and Thomas F. Verrichia, (*Id.* ¶¶ 82-90); Unjust Enrichment against TVC Development Company, LLC (*Id.* ¶¶ 91-99); Veil Piercing against Thomas F. Verrichia (*Id.* ¶¶ 100-110); Conversion against Thomas F. Verricia (*Id.* ¶¶ 111-117); and Failure to Pay Account Stated against TVC Development Company.  (*Id.* ¶¶ 118-129.)

In the Amended Complaint, Plaintiff agreed to withdraw claims based on theories of Intentional Misrepresentation, Negligent Misrepresentation, and Unjust Enrichment because Defendants conceded that a valid contract existed between the Parties that is applicable to the facts of this case—the Pre-Development and Project Participation Agreement.  (*Id.* fn. 3; Pre-Development and Project Participation Agreement, "Pre-Development Agreement", SJM Ex. 2, ECF No. 31-5.)  The Plaintiff did not withdraw its claim for conversion against Thomas F. Verrichia in his individual and personal capacity.  (Amended Complaint ¶¶ 111-117.)

The Defendants filed a motion to dismiss the Amended Complaint which was denied by the Court. (Motion to Dismiss First Amended Complaint, ECF No. 27; Order, ECF No. 55.) After conducting discovery, Plaintiff filed a motion for summary judgment and Defendants filed a partial motion for summary judgment.  Both motions are now before the Court.

B.     **Factual Background:**

This case is about a contractual dispute that arose from a series of commercial real estate development projects undertaken by the Parties. The Parties entered into a Pre-Development Agreement in October of 2014 and made effective August 1, 2014, as revised and amended. (Pre-Development Agreement.) The Pre-Development Agreement outlines the terms of the global business dealings between the Parties under which they agreed to source and execute various development projects for lease to national-brand retailers and restaurants (e.g., CVS, Wawa, Walgreens, Applebee's). (Pl.'s Statement of Material Facts ("SMF") ¶ 9, ECF No. 31-3.) The List of Projects attached to the Pre-Development Agreement identifies eleven separate individual development sites that the Parties were evaluating for construction. (Pre-Development Agreement page 15.) The Parties entered into negotiations in early 2017 to amend the Pre-Development Agreement—these negotiations spanned roughly eight months and involved at least fourteen drafts of the amendments. (Defs' Resp. SMF ¶¶ 27-29.) Plaintiff alleges that the Pre-Development Agreement was modified and amended; however, Defendants contend that no modification or amendment occurred. (*Id.*; SMF ¶¶ 27-29.)

Under the terms of the Pre-Development Agreement, Defendants agreed, among other things, to: (i) evaluate and select sites for potential Projects, including conducting due diligence reviews, investigating zoning and environmental issues, and conducting title analysis; (ii) negotiate an option agreement or similar agreement for acquisition of the selected Project site ("Agreement of Purchase"); (iii) execute a lease with Lessees for each Project; and (iv) prepare plans, permits and approvals needed for Project site construction. (Defs' Resp. SMF ¶ 10.) For its part, Plaintiff agreed to, among other things, advance the necessary funds to cover the pre-development activities, and all earnest money and deposit funds relative to contracts for purchase

of Project sites and financing. (*Id.* ¶ 11.) Under the terms of the Pre-Development Agreement, Plaintiff was required to fund pre-development expenses while a project was being pursued. (Pl's Resp. to Defs' SMF ¶ 12, ECF No. 38-2.)

The Parties pursued various development projects in furtherance of the Pre-Development Agreement to various levels of success. (PMSJ page 1.) Most of the development projects proceeded under the terms of the Agreement without controversy. (*Id.*) However, two projects did not proceed as planned and resulted in this litigation. (*Id.*; Amended Complaint.) The Parties identify these two projects as the Indiana Project and the Tonnelle Project. (*Id.*) The Indiana Project is a plan to develop a commercial complex located along Route 422 right off of Highway 56 in White Township, Indiana County, Pennsylvania. (Pre-Development Agreement (List of Projects).) The Indiana Project envisioned the construction of a hotel along with an Appelbee's Grill and Bob Evans' Diner. (Verrichia Deposition page 55, MSJ Ex. 82, ECF No. 31-28.; MSJ Ex. 9, ECF No. 31-8.) The Tonnelle Project contemplated the construction of a Wawa and Chick-fil-A at 7400 Tonnelle Avenue, North Bergen, New Jersey. (Verrichia Deposition page 147; Amended Complaint, Ex. 5, 7.)

Under the terms of the Pre-Development Agreement, the Plaintiff provided preliminary and advance funding for the Indiana Project and Tonnelle Project in an amount totaling $1,327,252.45 – $397,229.75 for the Indiana Project and $930,022.70 for the Tonnelle Project.[1] Defs' Resp. to SMF ¶¶21, 35; ECF No. 36.) Plaintiff now seeks return of these funds.

## II.     LEGAL STANDARD:

Summary Judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] Plaintiff contends that pre-development expenditures for the Tonnelle Project were in the amount of $933,385.20. (Amended Complaint ¶ 122; SMF ¶ 63.)

Civ. P. 56(a). *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

5

must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION:

The Court will analyze the factual and legal issues presented in the cross-motions for summary judgment from the prospective that the relationship between the Parties is governed by the Pre-Development Agreement because the Pre-Development Agreement is the primary focus of this litigation.

> **A. Summary Judgment Will Be Denied in Relationship to Plaintiff's Theory of Breach of Contract under the Pre-Development Agreement:**

**A1.    The Indiana Project:**

The Court will deny both of the Parties' cross-motions for summary judgment on the issue of whether Plaintiff, on a theory of breach of contract in relationship to the Pre-Development Agreement, is entitled to the return of pre-development expenses and funding in the amount of $397,229.75 for the Indiana Project.  In their cross-motions for summary judgment, the Parties place at issue the question of whether the obligation to return pre-development expenditures has accrued by pointing to the specific language of the Pre-Development Agreement and its provisions related to Abandon Projects.  (Pre-Development Agreement § 6 (Abandoned Projects).)  Specifically, they dispute whether the obligation to return money was triggered by the satisfaction of conditions precedent clauses in Section 6(b) and 6(c).  (PMSJ page 7; Brief in Opposition to PMSJ page 5, ECF No. 38.)

Section 6(b) of the Pre-Development Agreement contains a conditions precedent clause which reads as follows:

> All funds, if any, received by Verrichia or Zimmer from any third party on account of the return of refundable deposits or the reimbursement of pre-development expenses in connection with an Abandoned Project shall be promptly returned to

> Verrichia and Zimmer in proportion to the total amount of funds each has advanced for such Abandoned Project which has not then been reimbursed. Exhibit 1.

(Pre-Development Agreement § 6(b).) Section 6(c) of the Pre-Development Agreement also contains a conditions precedent clause which reads as follows:

> [I]f within six (6) months after a Project becomes an Abandoned Project, Verrichia or its affiliate elects to pursue and thereafter acquires the site of such Abandoned Project, then if, as and when Verrichia or its affiliate completes closing on construction financing for the development of such Abandoned Project site, Verrichia shall then reimburse Zimmer for all pre-development expenses paid by Zimmer on account of such Abandoned Project.

(*Id.* § 6(c).)

By the express terms of the Pre-Development Agreement, pre-development expenses are not recoverable under Section 6(b) unless received "from a third party on account of the return of refundable deposits or the reimbursement of pre-development expenses in connection with an Abandoned Project". Therefore, receipt "from a third party" of any money which is a "refundable deposit" or a "reimbursement of pre-development expense" is a condition precedent to any obligation for reimbursement under Section 6(b). Similar to Section 6(b), Plaintiff's right to recover Pre-Development expenses under Section 6(c) arises only if, and when Verrichia or its affiliate completes closing on construction financing for the development of such Abandoned Project; therefore, the acquisition of construction financing is a condition precedent.

Disputed issues of material fact surround the status of the Indiana Project which prevent the Court from entering summary judgment in favor of either Party under the terms of the Pre-Development Agreement. For example, the Defendants take the position that there is no evidence to establish that they secured the return or reimbursement of any pre-development financing from third-parties. (Sur-Reply to MSJ page 3; ECF No. 39.) The Defendants also take the position that they have not closed on construction financing. (Def's SMF ¶¶ 20-23, ECF No.

34-2.)  Plaintiff disputes both of these contentions.  Therefore, these issues will be placed before the finder-of-fact.

### A2. The Tonnelle Project:

Plaintiff moves for summary judgment on the issue of pre-development expenses for the Tonnelle Project and seeks return of advanced funding in the amount of $933,385.20.  (MSJ page 8; Amended Complaint ¶ 122.)  Plaintiff argues that all of the conditions in the Pre-Development Agreement as they relate to Abandoned Projects have been satisfied; therefore, it is entitled to the return of pre-development expenses.  (*Id.* page 10.)  Defendants do not move for summary judgment on this claim, but oppose the Plaintiff's motion and argue that there are triable issues of material fact that prevent the entry of summary judgment in favor of Plaintiff.  (Resp. in Opposition to MSJ page 21.)  Defendants contest the amount of any repayment and argue that they are entitled certain credits and deductions from the money advanced for the Tonnelle Project.  (*Id.*)  In defense of their position, Defendants argue that Plaintiff materially breached the Pre-Development Agreement by failing to fund pre-development expenses prior to the point in time when the Tonnelle Project became an Abandoned Project as defined by the Agreement.  (*Id.*)  The Parties dispute the date on which the Tonnelle Project became an Abandoned Project thereby terminating Plaintiff's obligation to fund pre-development expenses.  (*Id.*)  Defendants cite to the fact that under the terms of the Pre-Development Agreement, Plaintiff was required to fund pre-development expenses and they argue that Plaintiff's failure to fulfil this contractual obligation caused them to incur significant expense to protect the pre-development expenditures and to continue the Tonnelle Project – which included legal fees as a result of litigation with third-parties that arose in connection with the Project.  (*Id.* page 23.)  Defendants specifically cite to the fact that the Parties jointly deposited $600,000 in earnest money to acquire property, and

they argue that this deposit had to be recovered through litigation with a third-party. (*Id.* page 24.) Defendants further argue that they had to expend funds to recover and protect some of the very same funds which Plaintiff seeks to be awarded in this litigation. (*Id.*)

The extent of damages, if any, caused by Plaintiff's purported material breach of the Pre-Development are questions best left to a finder-of-fact. Any monetary award entered in this litigation could be significantly affected if the Court finds that Plaintiff unilaterally decided to stop funding pre-development expenses prior to the point in time that the Tonnelle Project became an Abandoned Project as defined by the Pre-Development Agreement. Issues of material fact also revolve around whether Defendants provided proper written notice of the purported material breach of the Pre-Development Agreement which will be resolved at trial.[2]

**B.      The Gist of the Action Doctrine Bars the Claim for Conversion Against Defendant, Thomas Verrichia:**

In Count VII of the Amended Complaint, Plaintiff brings a claim for conversion against Thomas F. Verrichia. (Amended Complaint ¶¶ 111-117.) Under Pennsylvania law, conversion is defined as "the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Fenton v. Balick*, 821 F. Supp. 2d 755, 760 (E.D. Pa. Nov. 3, 2011); *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995).[3] In relationship to its conversion theory, Plaintiff seeks to recover $1,330,614.95 in principle, plus applicable

---

[2] Plaintiff argues that any claim that it breached the Pre-Development Agreement for failing to advance pre-development expenses is faulty because Defendant did not provide written notice of default and an opportunity to cure. (Reply in Support SMJ page 7, ECF NO. 37.) Defendants offer an email dated December 21, 2018 as an example of written notice of default. (Sur-Reply to MSJ, page 8-9, ECF No. 39; Defs' SMF, Exhibit 28, ECF No. 36-8.)

[3] The Parties consistently cited to Pennsylvania law in their briefing when addressing arguments related to the gist of the action doctrine; therefore, the Court applies Pennsylvania law when analyzing the gist of the action doctrine in conjunction with the facts of this case. Furthermore, the Parties agreed to the application of Pennsylvania law in the Pre-Development Agreement. (Pre-Development Agreement § 12(a).)

interest, for advanced pre-development expenses and/or earnest money deposits for the Indiana and Tonnelle Projects. (Amended Complaint ¶ 112.) Plaintiff avers that instead of returning these monies as required by the Pre-Development Agreement, Verrichia converted these funds for his own personal benefit or the benefit of other entities controlled by Verrichia. (*Id.* ¶ 115.) In the Amended Complaint, Plaintiff avers, "Specifically, and as detailed above, [Plaintiff's] earnest money deposits were used by Verrichia to purchase the Indiana and Tonnelle Projects for the benefit of Verrichia and/or Verrichia-controlled entities." (*Id.* ¶ 116.)

The "gist of the action doctrine" bars Plaintiff's ability to proceed on a theory of conversion because the relationship between the Parties is governed by a contract – the Pre-Development Agreement. The gist of the action doctrine has been adopted by the courts in Pennsylvania specifically to prevent ordinary breach of contract claims from being recast as tort claims. *Pittsburgh Construction Company v. Griffith*, 834 A.2d 572, 582 (Pa. Super. 2003); *eToll v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002).

The gist of the action doctrine looks to the source of the claims asserted and evaluates whether tort claims pleaded alongside contract claims constitute independent causes of action. *Bruno v. Erie Insurance Co.*, 106 A.3d 48, 68-69 (Pa. 2014). The Third Circuit has explained the gist of the action doctrine under Pennsylvania law:

> [T]o be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral.... [T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. 1996) (en banc) (quoting *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 663 A.2d 753, 757 (Pa. Super. 1995)). In other words, a claim should be limited to a contract claim when "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." *Bash v. Bell Telephone Co.*, 601 A.2d 825, 830 (Pa. Super. 1992).

*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103-04 (3d Cir. 2001). "Under Pennsylvania law, parties to the contract cannot be proper defendants for a tortious interference claim pertaining to that contract." *Alpart v. General Land Ptnrs, Inc.,* 574 F. Supp. 2d 491, 505 (Pa. Super. 2008) (citing *Maier v. Maretti,* 671 A.2d 701, 707 (Pa. Super. 1995)).[4]

When addressing the gist of the action doctrine, the Pennsylvania Supreme Court, explained "the nature of the duty alleged to have been breached is … to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Bruno v. Erie Insurance*, 106 A.3d 48, 68–69 (Pa. 2014). It continued "if the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract … If … the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id.* The *Bruno* court directed lower courts that were applying the test to focus on the duty created: if "the duty breached is one created by the parties by the terms of their contract[,]" the claim is contractual; if "the claim involves the defendant's violation of a broader social duty owed to all individuals," the claim is a tort claim. *Id.* at 68.

---

[4] The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. *Hart v. Arnold*, 884 A.2d. 316, 332 (Pa. Super. 2005). The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the Parties were ignorant of the meaning of the language they employed. When writing is clear and unequivocal, its meaning must be determined by its contents alone. *Murphy v. Duquesne University of the Holy Ghost*, 777 A.2d. 418, 429 (Pa. 2001). This is why it is important to use the gist of the action doctrine at the preliminary objection/motion to dismiss stage. Only where the terms of a contract are ambiguous would parol evidence be introduced. *Synthes USA Sales, LLC v. Harrison*, 83 A.3d. 242, 251 (Pa. Super. 2013).

The critical flaw in Plaintiff's conversion theory is that the relationship between the Parties is governed by a complex contract – the Pre-Development Agreement. In executing the Pre-Development Agreement, the Parties negotiated and adopted an integrated and sophisticated business arrangement between two business entities operating on a national scale. (Pl.'s Counter SMF ¶¶ 1-4; ECF No. 38-2.) Therefore, any alleged conversion arose in the course and scope of this contractual relationship. The tortious wrong ascribed to Defendant Verrichia is that he failed to return the pre-development expenses and/or funding under the Pre-Development Agreement which essentially duplicates the theory for recovery asserted in the breach of contract action pled against both Defendants collectively. (Amended Complaint ¶¶ 53-64, 115-116.) In making claims based on conversion and breach of contract, Plaintiff essentially asserts identical allegations against both Defendants by asserting that it is entitled to the return of pre-development expenses or funding under the terms of the Pre-Development Agreement. (*Id.*) In this manner, Plaintiff's conversion claim is duplicative of its breach of contract claim because the damages sought are compensable in an ordinary contract action.

Despite Plaintiff's contentions otherwise, all of its allegations in support of its tort claim for conversion arise solely from the Pre-Development Agreement entered into with Defendant, TVC Development Company. (*See generally Id.*) Therefore, the conversion claim cannot be said to be so tangental to the Parties' relationship so as to make the alleged conversion the gist of the action. Rather, the conversion claim is inextricably intertwined with the contractual claim because if Plaintiff does not have a right to possession under the Pre-Development Agreement no claim for conversion could exist. All of the duties and liabilities that Plaintiff relies upon are grounded explicitly in that Agreement. There is no dispute between the Parties that all funds advanced by Zimmer were, in fact, pre-development expenses. (Pl.'s Resp. to Defes' SMF ¶¶

12

39, 40, 56.) Furthermore, it is undisputed that the pre-development expenses were advanced subject to the Pre-Development Agreement and would not have been advanced at all but for the Agreement. Jeffery Zimmer, principal of the Plaintiff, openly admitted that the Pre-Development Agreement "kind of spoke for everything". (Zimmer Deposition page 96, PMSJ Ex. 100, ECF No. 34-17.)

In an attempt to bolster its conversion claim, Plaintiff cites to circumstances related to the development of the Indiana Project. (Pl.'s SMF ¶¶ 65-70.) It claims that after the Indiana Project was abandoned, Verrichia decided to move forward with the Project on his own using earnest money that had been deposited in escrow accounts held by third parties. (*Id.* ¶ 66.) Plaintiff claims that in moving forward with the Indiana Project, the Verrichia Defendants represented to ARCTrust that the $397,229.75 Plaintiff advanced in connection with Indiana Project, was their own. (*Id.*) However, these allegations related to Defendant Verrichia's negotiations with a third-party do nothing to change the fact that the relationship between Plaintiff and Defendants is governed by contract—the Pre-Development Agreement.

The fact that Verrichia did not sign the Pre-Development Agreement does not prevent the application of the gist of the action doctrine, even though he was not personally a party to the Pre-Development Agreement.[5] Plaintiff cannot detach Verrichia from his status as an agent of Defendant TVC Development Company because, as previously mentioned, the Pre-Development Agreement "created the duties that [were] allegedly breached." *Integrated Waste Solutions, Inc. v. Goverdhanam*, No. 10-cv-2155, 2010 U.S. Dist. LEXIS 127192, at *37 (E.D. Pa. 2010);

---

[5] Plaintiff argues that the application of the gist of the action doctrine is inappropriate to Verrichia because of his status as a non-signatory to the Pre-Development Agreement. (Brief in Opposition to PMSJ pages 18-19, ECF No. 38.)

*Oldcastle Precast, Inc. v. VPMC, Ltd.*, No. 12-6270, 2013 U.S. Dist. LEXIS 67481, at *21 (E.D. Pa. 2013) ("Here, we follow the rationale of *Williams* and *Integrated* and will not preclude the application of the gist of the action doctrine regarding [plaintiff's] tort claims against [defendant] solely because he is not a signatory to the First Modification Agreement.").

The Court finds support in a non-precedential, though persuasive, Third Circuit opinion *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 387 (3d Cir. 2004). In *Williams*, the Third Circuit addressed whether the gist of the action doctrine barred tort claims against defendants who were not parties to the contract at issue. *Id.* The district court in *Williams* had dismissed the plaintiff's tort claims, under the gist of the action doctrine, against a defendant who was not a party to the contract at issue. *Id.* The Third Circuit affirmed, stating that "As the Pennsylvania courts have spelled out, the gist of the action doctrine bars tort claims against an individual defendant where the contract between the plaintiff and the officer's company created the duties that the individual allegedly breached." *Id.*

Since *Williams*, numerous district courts within the Third Circuit have held that the gist of the action doctrine bars tort claims against non-parties to the contract if the defendants acted merely as agents or employees of the entity that was a party to the contract. *Furniture Sols. & Res. V. Symmetry Office*, LLC, No. 15-cv-4774, 2015 U.S. Dist. LEXIS 170790 (E.D. Pa. Dec 22, 2015) (holding that the gist of the action doctrine precludes tort claims against agents of corporate defendant because claims arose from corporate defendant's underlying breach of contract); *Integrated Waste Sols.*, 2010 U.S. Dist. LEXIS 127192, at *37-38 (holding that the gist of the action doctrine barred plaintiff's fraud, intentional misrepresentation, and negligent misrepresentation claims against the individual defendant, who served as the CEO of corporate defendant, despite the lack of contractual relationship with the individual defendant, because the

CEO's misrepresentations concerned the subject matter of the contract between the plaintiff and the company); *Velocity Int'l, Inc. v. Celerity Healthcare Sols., Inc.*, No. 09-cv-0102, 2012 U.S. Dist. LEXIS 167528, at *4 (W.D. Pa. Nov. 27, 2012) (dismissing tortious interference claim against the agent of corporate defendant under gist of the action doctrine); *Oldcastle Precast*, 2013 U.S. Dist. LEXIS 67481, at *21 ("Here, we follow the rationale of *Williams* and *Integrated* and will not preclude the application of the gist of the action doctrine regarding [plaintiff's] tort claims against [defendant] solely because he is not a signatory to the First Modification Agreement."); *North Am. Communs., Inc., v. Herman*, 2018 U.S. Dist. LEXIS 79478, at *11-12 (Pa. W.D. May 11, 2018).

      **C.**      **Summary Judgment Will Be Granted in Relationship to Plaintiff's Theory of Account Stated:**

Plaintiff has advanced a claim based on a theory of account stated against Defendant, TVC Development Company. Account stated is a variety of a traditional contract claim that "arises when two parties, who engage in a series of transactions with one another, come together to balance the credits and debits and fix upon a total amount owed." *Richburg v. Palisades Collection*, LLC, 247 F.R.D. 457, 465 (E.D. Pa. 2008). To establish a claim for account stated, one party must render the account and the other party must accept it. *C-E Glass v. Ryan*, 70 Pa. D. & C. 2d 251, 254 (Pa. Ct. Com. Pl. 1975) (citing Pennsylvania Law Encyclopedia); 13 Pa. Law Encyc. § 513 (2019). An account stated is an account in writing that has been "examined and accepted by both parties." *Leinbach v. Wolle*, 61 A. 248, 248 (Pa. 1905); *see also Bill Goodwin Constr., LLC v. Wondra Constr.*, No. 13-157, 2013 U.S. Dist. LEXIS 109981, at *18 (M.D. Pa. Aug. 5, 2013) (citing *Leinbach*). Acceptance of an account may be express or implied. *Robbins v. Weinstein*, 17 A.2d 629, 634 (Pa. Super. Ct. 1941).

Once the account is stated and accepted, "the cause of action is based on the account stated and not the underlying contract." *Rochester Drug Coop., Inc. v. Goodheart Pharmacy, Inc.*, No. 16-1787, 2016 U.S. Dist. LEXIS 163551, at *11 (E.D. Pa. Nov. 23, 2016); *Richburg v. Palisades Collection, LLC*, 247 F.R.D. 457, 464-65 (E.D. Pa. 2008). Account stated is a separate cause of action independent from an underlying contract. *Richburg*, 247 F.R.D. at 464-65. It is not an action arising out of the parties' contract. *Id.* Under Pennsylvania law, a plaintiff must establish the following elements to support an account stated claim: "(1) there has been a running account, (2) a balance remains due, (3) the account has been rendered upon the defendant, and (4) the defendant has assented to the account." *Citibank (S.D.), N.A. v. Ambrose*, 13 Pa. D. & C.5th 402, 405 (Pa. Ct. Comm. P. 2010).

In support of its claim for account stated, Plaintiff points to an email sent by Nancy Verrichia on July 12, 2019 in response to an email written by Plaintiff's Controller, Katherine Matthews. (Verrichia Email July 12, 2019, MSJ Ex. 21, ECF No. 31-20.) Ms. Matthews forwarded an email to Ms. Verrichia entitled "Project Balances as of 5/31/19" in which she summarized the outstanding balance due in relationship to various projects undertaken by the Parties. (Matthews Email June 28, 2019, MSJ Ex. 19, ECF No. 31-18.) Ms. Matthews' email identifies the relevant account balances as follows: the Indiana Project $397,229.75 plus interest in the amount $95,946.04; the Tonnelle Project $933,385.20 plus interest in the amount of 232,049.80; and the Verrichia Loan $63,904.54. (*Id.*) Ms. Verrichia responded by disputing whether interest was due on amounts owed in relationship to the Indiana and Tonnelle Projects. (Verrichia Email.) She also identified discrepancies in the amount of the Verrichia Loan and she indicated that Ms. Matthews failed to apply a promised $100,000 reduction to the account balance. (*Id.*)

Defendant primarily contests the fourth element of the account stated claim by arguing that Plaintiff has not satisfied the requirement that the Parties reached an agreement on a fixed amount of payment due. (PMSJ page 26.) Defendant argues that Ms. Verrichia's email placed the amount of the account balances in controversy and that she did not assent to the account balance as stated by Plaintiff. The Court agrees with Defendant on this issue. "The essence of an account stated is that there is an agreement to, or acquiescence in the correctness of the account, so that in proving the account stated, it is not necessary to show the nature of the original transaction or indebtedness." *Connolly Epstein Chicco Foxman Engelmyer & Ewing v. Fanslow*, No. 95-2835, 1995 U.S. Dist. LEXIS 17231, at *12 (E.D. Pa. Nov. 15, 1995).

The Court determines that such "acquiescence in the correctness of the account" is inconsistent with the email forwarded by Ms. Verrichia in which she disputed several hundred thousand dollars of the account balance as calculated by Plaintiff. Other courts addressing this identical question have reached the same conclusion. For example, the Supreme Court of Montana has held that "the single indispensable ingredient in an account stated is an exact, certain, and definite balance arrived at by the debtor and creditor." *Nelson v. Mont. Iron Mining Co.* 140 Mont. 331, 371 P.2d 874, 876 (Mont. 1962). Absent that "indispensable ingredient," no reasonable jury could determine Defendant assented to the account. Defendant's motion for summary judgment is therefore granted with respect to Plaintiff's theory of account stated.

Plaintiff's theory of account stated is equally dubious in light of the context in which Ms. Verrichia responded to the email forwarded by Ms. Matthews. At that point in time, the Parties were engaged in a dispute related to the return of pre-development expenses under the Pre-Development Agreement—an agreement which set forth various conditions precedent to Defendant's obligation to return advance funding. The issue therefore was, and is, not whether

Defendant was in fact required to return advanced funding, but whether the obligation had accrued under the terms of the Pre-Development Agreement.  There is no indication that Ms. Verrichia intended to renegotiate the terms of the Pre-Development Agreement when she responded to the email forwarded by Ms. Matthews.  To the extent that Ms. Verrichia confirmed any outstanding balance, the Court believes this confirmation was based on the arrangement between the Parties within the context of the Pre-Development agreement.  Without some intent or meeting of the minds to discard the Pre-Development Agreement, there can be no agreement as the account stated by Plaintiff.

> **D.     Summary Judgment Will Be Granted in Relationship to Plaintiff's Theory of Breach of Contract on the Purported Indiana Project Loan:**

The Court will also dispense with Plaintiff's theory that the Parties reached an agreement in August of 2016 to recharacterize the $397,229.75 in pre-development expenses or funding in relationship to the Indiana Project as a traditional loan.  Plaintiff takes the position that amounts owed in relationship to the Indiana Project were transformed into a loan via a standalone agreement entered into in August of 2016 that was separate from the Pre-Development Agreement.  (Brief in Opposition to PMSJ pages 8 & 13, ECF No. 38.)  In support of this contention, Plaintiff cites to an email exchange that took place between the Parties after a dispute surrounding the Indiana Project arose.  (Verrichia Email November 19, 2016, MSJ Ex. 12; Verrichia Deposition page 64-66, MSJ Ex. 82, ECF No. 31-28.)  In this email exchange, Verrichia made reference to an agreement to treat the $397,229.75 owed in relationship to the Indiana Project as a loan.  (*Id.*)  Plaintiff also cites to Defendant's account balance sheets which denote that the money owed in relationship to the Indiana Project is a loan.  (Brief in Opposition to PMSJ page 8; Balance Sheets, MSJ Ex. 21, 45, 46, ECF Nos. 31-20, 27, 28.)  However, Plaintiff came forward with no written document that memorializes the purported agreement

between the Parties to convert pre-development expenses into a loan.  (Pl.'s Resp. to Def's SMF ¶¶ 30-32.)

Defendants deny the allegation that any agreement was ever reached to recharacterize development expenses as a loan.  (Def's SMF ¶¶ 30-34.)  Defendants admit that the Parties had engaged in negotiations to amend and modify the Pre-Development Agreement as it relates to the obligation to reimburse Plaintiff for pre-development expenses which would have recharacterized the debt as a loan if the Parties had reached a final agreement.  (*Id.*)  However, Defendants contend that the negotiations did not result in a final agreement on the issue as evident by the fact that no independent paperwork memorializing the purported loan was actually exchanged or signed; therefore, Defendants contend that their obligation is governed by the Pre-Development Agreement.[6]  (PMSJ page 9.)

The Court agrees with Defendants on this issue.  The undisputed facts are that the Parties never executed a written agreement to convert pre-development expenses into a traditional loan—thereby modifying the Pre-Development Agreement.  Without a signed loan agreement, all Plaintiff can do is establish that the Parties engaged in negotiations which is insufficient to establish a claim for breach of contract based on a purported loan.  This is especially true because the Pre-Development Agreement is a fully integrated document which prohibits modification in the absence of a writing executed by the Parties.  It reads as follows:

> Entire Agreement. The Agreement contains the entire understanding of the parties with respect to the subject matter hereof, supersedes all prior negotiations, representations, understandings and agreements of, by or among the parties, express or implied, oral or written, which are fully merged herein. The express terms of this Agreement control and supersede any course of performance and/or

---

[6] Defendants admit that pre-development expenses were carried on their books as a loan. However, Defendants aver that the loan notation simply indicates a liability and obligation to reimburse contigent on the acquisition of construction financing per the terms of the Pre-Development Agreement. (Reply Brief PMSJ page 4, ECF No. 40.)

> customary practice inconsistent with any such terms. Any agreement hereafter made shall be ineffective to change, modify, discharge, or effect an abandonment of this Agreement unless such agreement is in writing and signed by the party against whom enforcement of such change, modification, discharge or abandonment is sought.

(Pre-Development Agreement § 12(A).)  Therefore, Plaintiff's breach of contract claim based on a purported loan in relationship to the Indiana Project fails.

        **C.**       **Punitive Damages and Piercing the Corporate Veil:**

In the Amended Complaint, Plaintiff requests "[a]n award of punitive damages based on the conversion of Zimmer Development's funds and TVC's intentional misrepresentation." (Amended Complaint – Prayer for Relief ¶ c.)  Since the Court has dismissed the claim for conversion and the claim for intentional misrepresentation has been voluntarily dismissed, Plaintiff's request for punitive damages will also be dismissed.

The Court will not decide the issue of piercing the corporate veil in relationship to Verrichia's personal assets at the summary judgment stage of this litigation.  This issue will be left for trial.

**IV.**      **CONCLUSION:**

For these reasons, Defendants' motion for summary judgment will be granted on the theory of conversion and the conjoined request for punitive damages.  Defendants' motion for summary judgment will also be granted on theories of account stated and breach of contract for the purported loan related to advanced expenses for the Indiana Project.  The Parties' motions will be denied in all other regards.

                                                  BY THE COURT:

                                                    /s/ John Milton Younge  
                                                  Judge John Milton Younge